Filed 9/30/24  P. v. Woodard CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE WOODARD,<br><br>        Defendant and Appellant. | A168271<br><br>(Marin County<br>Super. Ct. No. SC010467B) |

A jury found defendant and appellant Lawrence Woodard guilty of both conspiracy to commit murder and first degree murder. The jury further found true the special circumstance of an intentional murder of a peace officer. Years later, Woodard petitioned the trial court for resentencing pursuant to Penal Code section 1172.6,[1] claiming that he could not be found liable for murder under current law. The court denied Woodard's petition, concluding he was ineligible for relief as a matter of law based on the record of his conviction. Woodard appeals, contending that the jury instructions could have led the jury to convict him of murder without finding he personally harbored malice. His arguments are meritless, and we will affirm the order.

---

[1]    All statutory references herein are to the Penal Code.

1

## I. FACTS AND PROCEDURAL HISTORY

### A. The Crimes[2]

In 1985, Woodard was an inmate at San Quentin Prison. He and two other inmates, Jarvis Masters and Andre Johnson, were members of a prison gang known as the Black Guerilla Family (BGF). BGF planned to kill two prison guards, have inmates from the Crips gang kill two guards, and then attack other inmates associated with rival gangs. Woodard and Masters met with other BGF gang members during exercise periods to plan the attacks, and it was decided that Sergeant Dean Burchfield would be the first victim. Johnson was chosen to do the killing because it was dark outside his cell. The plan was for Burchfield to be attracted to the area of Johnson's cell and for Johnson to stab him. Another BGF member made a shaft to attach to a knife and form a spear, which would allow Johnson to reach out of his cell and kill Burchfield as he walked past.

In June 1985, as Sergeant Burchfield made his rounds to check on the inmates, he was "hit" outside Johnson's cell; a relatively small, sharp-edged stab wound to the upper chest severed his pulmonary artery, causing him to collapse and bleed to death. Johnson, Masters, and Woodard were charged with his murder.

---

[2] We set forth the crimes as summarized in our prior opinion in this matter. (See *People v. Johnson* (1993) 19 Cal.App.4th 778 (*Johnson*).) Because the opinion in *Johnson* is only partially published, respondent seeks judicial notice of the entire opinion. Respondent also seeks judicial notice of the record in the prior appeal (*People v. Woodard* (Oct. 20, 1993, A052254) [nonpub. opn.]). We hereby grant these unopposed requests for judicial notice. In resolving the issues on appeal, however, we rely on our independent review of the record of conviction, including the jury instructions and verdicts, and not the factual statements in our prior opinion. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1247, fn. 3 (*Williams*).)

B.  Jury Verdict and Affirmance

As relevant here, the trial court instructed the jury on conspiracy to commit murder and assault (§ 182; count one), murder (§ 187, subd. (a); count two), direct aiding and abetting, degrees of murder, and the special circumstance for murder of a peace officer who was intentionally killed while engaged in the performance of his duties (§ 190.2, subd. (a)(7)).  The jury was not instructed on felony murder or the natural and probable consequences theory of murder.

The jury convicted Woodard of conspiracy to commit murder and assault as well as murder in the first degree.  The jury also found true the special circumstance for intentional murder of a peace officer.[3]  The trial court sentenced him to life in prison without the possibility of parole.

Woodard appealed, and this court affirmed his convictions in October 1993.  (*Johnson*, *supra*, 19 Cal.App.4th 778.)

C.  Changes to the Law

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (SB 1437) amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Gentile* (2020) 10 Cal.5th 830, 842, superseded by

---

[3]    Woodard was tried with Johnson and Masters.  Woodard's jury rendered its verdict on January 8, 1990.  On January 3, 1990, a separate jury convicted Johnson of conspiracy to commit murder and first degree murder.  It also found true the allegation that Johnson personally used a deadly weapon during the commission of the murder and the special circumstance for the intentional murder of a peace officer.

3

statute on other grounds as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) SB 1437 accomplished this by amending section 188, subdivision (a)(3), to require that a defendant must act with express or implied malice to be convicted as a principal of that crime, with the exception of felony murder as defined under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.)

SB 1437 also added former section 1170.95 (now section 1172.6), which established a procedure for defendants convicted of murder under the old law to seek resentencing if they could not be convicted of murder under amended sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) As clarified by case law and subsequent statutory amendments, the procedure is essentially as follows. If the petition is properly pleaded, the trial court appoints counsel for the petitioner upon request. The court conducts an initial analysis, with briefing by the parties, to determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of the statute. If there is no prima facie showing, the petition is dismissed. If there is a prima facie showing, the court issues an order to show cause and conducts an evidentiary hearing, at which the prosecutor bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for relief. (§ 1172.6, subds. (c)-(d); see *People v. Lewis* (2021) 11 Cal.5th 952, 961–967 (*Lewis*).)[4]

---

[4]    Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (SB 775) amended section 1170.95 to expand its scope and clarify its procedures. (Stats. 2021, ch. 551.) Among other changes, SB 775 permits individuals to petition for resentencing if an attempted murder or manslaughter conviction was based on a natural and probable consequences theory, a felony murder theory predating SB 1437, or some "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a)(1).) Section 1170.95 was renumbered as section 1172.6 effective June 2022.

4

D. <u>Woodard's Motion for Resentencing</u>

In March 2022, Woodard filed a motion for resentencing pursuant to current section 1172.6. The prosecution opposed, arguing that Woodard was ineligible for relief because the record of conviction established that the jury found he harbored an intent to kill and because his conviction was not based on felony murder, the natural and probable consequences doctrine, or any other theory of imputed malice. The prosecution provided 11 exhibits from Woodard's trial, including the amended information, the prosecutor's closing arguments, the jury instructions, the verdict forms, and this court's opinion on direct appeal.

The trial court denied Woodard's petition without issuing an order to show cause. The court found that Woodard had not established a prima facie case under section 1172.6 because the jury instructions and his conviction of first degree premeditated murder established that the jury necessarily found he harbored an intent to kill. The court also found that the conspiracy instructions, including that a co-conspirator is liable for the natural and probable consequences of the acts of another co-conspirator, were made in the context of the conspiracy charge and did not suggest that the jury should ignore the instructions on the separate murder charge.

Woodard filed a timely notice of appeal.[5]

## II. <u>DISCUSSION</u>

At the prima facie stage of a section 1172.6 proceeding, the trial court shall deny the resentencing petition if the petitioner is ineligible for relief as a matter of law. (*People v. Mancilla* (2021) 67 Cal.App.5th 854, 864,

---

[5]     The trial court also denied Johnson's motion for resentencing under section 1172.6, and Johnson appealed from that ruling (*People v. Johnson* (A168079, app. pending)).

superseded by statute on other grounds as stated in *People v. Lee* (2023) 95 Cal.App.5th 1164, 1184; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980–981, abrogated on other grounds by *Lewis, supra,* 11 Cal.5th at p. 963.)

"A petitioner is ineligible for resentencing as a matter of law if the record of conviction conclusively establishes, with no factfinding, weighing of evidence, or credibility determinations, that (1) the petitioner was the actual killer, or (2) the petitioner was not the actual killer, but, *with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree,* (3) the petitioner was a major participant in the underlying felony and acted with reckless indifference to human life, or (4) the petitioner acted with malice aforethought that was not imputed based solely on participation in a crime." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14 (italics added); see §§ 188, subd. (a)(3), 189, subd. (e)).)

Thus, a petitioner is ineligible for relief and the petition must be denied if the record of conviction shows that the murder conviction was necessarily based on a theory of liability that remains valid under SB 1437, such as the theory that the petitioner acted with express or implied malice. (See, e.g., *People v. Estrada* (2022) 77 Cal.App.5th 941, 945–949 [conviction based on direct aiding and abetting malice murder is ineligible for § 1172.6 relief]; *People v. Medrano* (2021) 68 Cal.App.5th 177, 184 (*Medrano I*) [petitioner convicted of first degree murder and conspiracy to commit first degree murder is ineligible for relief under § 1172.6]; *People v. Medrano* (2024) 98 Cal.App.5th 1254, 1265 (*Medrano II*) [same].)

We review the trial court's ruling at the prima facie stage de novo. (*Williams, supra,* 86 Cal.App.5th at p. 1251; *People v. Cortes* (2022) 75 Cal.App.5th 198, 205 (*Cortes*); *People v. Harden* (2022) 81 Cal.App.5th 45,

6

52 (*Harden*).) Generally, we may affirm the ruling if it is correct on any ground. (*Harden,* at p. 60, fn. 13.)[6]

A. The Record of Conviction Establishes Ineligibility

The record of conviction establishes that Woodard was ineligible for resentencing under section 1172.6. The jury was not instructed that it could convict Woodard of murder based on a felony-murder theory, the natural and probable consequences doctrine of murder, or any other imputed malice theory disallowed by SB 1437. (*People v. Allen* (2023) 97 Cal.App.5th 389, 395 (*Allen*) ["A petitioner is ineligible for section 1172.6 relief as a matter of law if, for example, the jury instructions show that jurors were not instructed on any theory of liability affected by [SB] 1437's changes to sections 188 and 189"]; *People v. Daniel* (2020) 57 Cal.App.5th 666, 677 [petitioner ineligible as a matter of law where no instructions were given on felony murder or murder under the natural and probable consequences doctrine]; *Cortes, supra,* 75 Cal.App.5th at p. 205 [petitioner ineligible for resentencing where "the

---

[6] Respondent argues that the issue of Woodard's intent has already been resolved under the law of the case doctrine due to our ruling in his prior appeal. (See *Medrano II, supra,* 98 Cal.App.5th at p. 1262.) In that appeal, Woodard contended that the trial court's instruction on the special circumstance did not adequately inform the jury that an aider and abettor to the murder would have to possess an intent to kill. We concluded that the trial court properly instructed the jury with CALJIC No. 8.80. We also observed that it was "impossible to conceive of a juror who found appellant Woodard guilty of first degree murder and conspiracy to murder, yet believed Woodard did not intend to kill the victim of the conspiracy to murder." Woodard counters that the law of the case doctrine does not apply at the prima facie stage of a section 1172.6 proceeding. We need not and do not decide whether the law of the case doctrine applies, because we resolve this appeal on other grounds.

jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to him"].)

More notably, the record demonstrates that Woodard was convicted of murder consistent with current murder laws, based on findings that he personally harbored malice. In finding that he was guilty of murder, the jury necessarily found that he acted with malice given the court's instructions on direct aiding and abetting. Moreover, the jury found that he was liable for murder in the first degree, which requires an intent to kill.

### 1. Aiding and Abetting

An actual killer is not entitled to relief under section 1172.6. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 743–745.) Assuming that Woodard was found guilty of murder as an aider and abettor rather than the actual killer (which appears likely), the record of conviction still demonstrates that he is ineligible for relief.

Pursuant to CALJIC No. 3.01, the jury was instructed that Woodard could not be liable for aiding and abetting murder unless he had "knowledge of the unlawful purpose of the perpetrator" and acted "*with the intent or purpose of committing, encouraging, or facilitating the commission of the crime.*" (Italics added.) This is direct aiding and abetting, as distinguished from indirect aiding and abetting under a natural and probable consequences theory. (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 (*Soto*).) A murder conviction under a direct aiding and abetting theory precludes relief under section 1172.6 as a matter of law. (*Allen*, *supra*, 97 Cal.App.5th at p. 395 [conviction under a direct aiding and abetting theory of murder precludes section 1172.6 relief because jurors must have concluded that he harbored the intent to kill]; *Williams*, *supra*, 86 Cal.App.5th at p. 1252 ["It is well settled that SB 1437 'does not eliminate direct aiding and abetting liability

8

for murder because a direct aider and abettor to murder must possess malice aforethought' "].)

## 2. Premeditation and Deliberation for First Degree Murder

Pursuant to CALJIC No. 8.20, the trial court instructed the jury on first degree murder as follows: "All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with *express malice aforethought* is murder of the first degree. [¶] The word 'willful,' as used in this instruction, means intentional. [¶] The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand. [¶] *If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill*, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree." (Italics added.)

By finding that Woodard was liable for first degree murder, the jury necessarily found that he had a "clear, deliberate intent . . . to kill." (CALJIC No. 8.20.) A defendant who acted with an intent to kill is not entitled to relief under section 1172.6 as a matter of law. (*Allen, supra*, 97 Cal.App.5th at p. 392 ["So long as [petitioners] intend to kill a human being, they are ineligible for [] section 1172.6 resentencing as a matter of law"].)

The absence of any instruction on imputed malice murder, as well as the trial court's instructions and jury findings on first degree murder and direct aiding and abetting liability, demonstrate that the jury convicted Woodard of murder based on a theory of personal malice consistent with the

9

amended murder statutes.[7] Woodard is ineligible for relief under section 1172.6 as a matter of law, and the court did not err in denying his petition.

B. Woodard's Arguments are Unavailing

Woodard contends that the jury instructions pertaining to the conspiracy count allowed him to be convicted of conspiracy to commit second degree murder rather than first degree murder. To the contrary, the jury was instructed that conspiracy to commit murder required a "specific intent to commit such offense" (CALJIC No. 6.10) and "the crime of murder requires the specific intent to kill" (CALJIC No. 3.31). The jury's conviction on count one thus confirmed that the jury believed Woodard harbored an intent to kill as required for first degree murder.

Woodard nonetheless points out that the CALJIC No. 3.31 instruction further stated that the "specific intent required is also *included in the definition of the crimes*." (Italics added.) He claims the jury was "thereby directly referred to the instructions identifying the specific intent for the target offenses, and the instructions for murder did not specify that an intent to kill was required" because they referred both to express malice and to implied malice.

The argument is of no moment. In the first place, the reference in CALJIC No. 3.31 that the required "specific intent" – referring to the "specific intent to kill" mentioned earlier in the instruction – "is also included in the definition of the crimes" is logically understood to mean that the intent to kill would be discussed later in the part of CALJIC No. 8.10 that addresses the intent to kill (express malice). It would make no sense for the jury to think

---

[7] In addition, we note that the jury found true the special circumstance for the *intentional* killing of a peace officer. (See CALJIC No. 8.80; accord CALJIC No. 8.81.7.)

10

that the "specific intent [to kill]" in CALJIC No. 3.31 could mean the *absence* of an intent to kill as discussed in the part of CALJIC No. 8.10 dealing with implied malice. Nothing about the instructions, therefore, could reasonably lead the jury to believe that it could convict Woodard of conspiracy to commit murder without finding that he harbored an intent to kill. (See *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 642–644 (*Beck and Cruz*) [trial court's instruction on conspiracy to commit second degree murder was harmless because there was "no reasonable possibility that the jury embraced the 'logical impossibility' of a conspiracy to commit implied malice murder as opposed to convicting [the defendants] of conspiracy to commit murder upon a finding of intent to kill"].)

Moreover, even if the jury *was* given the impression that a conviction for conspiracy to commit murder (and murder) could be based on implied malice as well as express malice, Woodard still would have no right to relief under section 1172.6. Relief under the statute extends only to murder convictions that were based on *imputed* malice, and Woodard fails to show any possibility of that here.

In this regard, Woodard's reliance on *People v. Whitson* (2022) 79 Cal.App.5th 22 (*Whitson*) is misplaced. There, the trial court failed to instruct the jury that it could not convict the defendant of conspiracy to commit murder unless it found that he intended the murder. (*Id.* at pp. 31–32.) Noting that such an instruction would have rendered the defendant ineligible for resentencing relief under SB 1437 (*Whitson*, at p. 32), the appellate court held that the absence of the instruction precluded a conclusion that the jury necessarily found the requisite intent, and it therefore could not be said that resentencing relief was unavailable as a matter of law. (*Id.* at p. 33.) Here, by contrast, the jury *was* instructed that

11

it would have to find that Woodard intended to kill to convict him of conspiracy to murder. Under *Whitson*, therefore, Woodard is ineligible for resentencing relief as a matter of law. (*Allen, supra*, 97 Cal.App.5th at pp. 397–398 [distinguishing *Whitson* on this ground].)

Woodard next attacks the trial court's instruction under CALJIC No. 3.00, which defines principals in a crime. The court instructed: "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed[,] and equally guilty thereof[,] include one, those who directly and actively commit the act constituting the crime, or, two, those who aid and abet the commission of the crime." According to Woodard, because CALJIC No. 3.00 "deem[ed] the aider and abettor 'equally guilty' of the crime committed by the slayer, the mens rea of the slayer is imputed to the aider and abettor. Put another way, once the jury determines that the actual killer deliberated and killed, this established the guilt for first-degree murder of all other charged defendants."

Woodard is incorrect. Nothing in the trial court's instruction suggested that one defendant's state of mind was sufficient to convict all other defendants even if they lacked the state of mind necessary for the crime. The instruction merely stated that "[t]hose who directly and actively commit the act constituting the crime" are equally guilty with "[t]hose who aid and abet the commission of the crime." (CALJIC No. 3.00.) That was and is a correct statement of the law. And it still required the jury to determine *whether* Woodard "aid[ed] and abet[ted] the commission of the crime" (CALJIC No. 3.00), which, pursuant to the court's instruction under CALJIC No. 3.01, required proof that Woodard acted with malice (see CALJIC No. 3.01 [aiding and abetting liability requires proof that the defendant had "the intent or

12

purpose of committing, encouraging, or facilitating the commission of the crime"]).

Moreover, the jury convicted Woodard of first degree murder after being instructed with CALJIC No. 8.20, which stated that first degree murder requires an intent to kill. We presume the jury followed the trial court's instruction (*People v. Cortez* (2016) 63 Cal.4th 101, 131), and there is nothing in the record to suggest otherwise. The inescapable conclusion is that the jury believed Woodard acted with the intent to kill.

Woodard's reliance on *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790 is unavailing. There, the defendants argued that the trial court erred by instructing on the "equally guilty" language because it allowed the jury to convict them based on the direct perpetrator's culpability without considering their own intent. Our high court observed that the instruction correctly stated the law, and although it might be misleading in some circumstances, it was not misleading in the circumstances of that case. (*Id.* at pp. 846–847.) We reach the same conclusion here.

In a similar vein, Woodard argues that "once the jury found Johnson premeditated the murder, [Woodard] was 'equally guilty' of first-degree murder, regardless of his individual intent, *because all murder was deemed a 'natural and probable consequence' of the conspiracy charged in count 1.*" (Italics added.) Again, his analysis is incorrect. One of the conspiracy instructions (CALJIC No. 6.11) stated that "[a] member of a conspiracy is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but is also liable for the natural and probable consequences of any act of a co-conspirator to further the object of the conspiracy, even though such act was not intended as a part of the original plan and even though he was not present at the time of the commission of

13

such act."  In some cases, this language could result in a defendant being liable for a crime greater than the crime he conspired to commit.  But here, the jury found that Woodard was guilty not only of conspiracy to commit assault, but conspiracy *to commit murder*; there was, therefore, no use of the "natural and probable consequences" language to convict Woodard of murder. (See *Beck and Cruz, supra,* 8 Cal.5th at p. 645 [because defendants were charged with conspiracy to commit murder, rather than conspiracy to commit a lesser crime that resulted in murder, there is no possibility they were found guilty of murder on a natural and probable consequences theory"]; *Medrano II*, *supra*, 98 Cal.App.5th at p. 1267 [" 'murder was the object of the conspiracy, not the natural and probable consequence of an act committed to further the object of the conspiracy' "].)[8]

In his reply brief, Woodard tries to sidestep the first degree murder conviction by challenging the trial court's instruction on premeditation and deliberation under CALJIC 8.20.  Woodard argues:  "Notably, the first-degree murder instruction given in [Woodard's] joint trial stated that while murder in the first degree requires 'the defendant' have the intent to kill, the instruction also stated:  'To constitute a deliberate and premeditated killing, the *slayer* must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, he decides to and does kill.' "

---

[8]     Woodard argues that the conspiracy conviction did not reflect a finding of intent to kill because he was charged with conspiracy to commit murder "and/or assault" rather than just conspiracy to commit murder.  Not so.  The jury did not merely convict Woodard of conspiracy to commit assault but convicted him of conspiracy to commit murder, and conspiracy to commit murder required a finding that he intended to kill.

14

We are not persuaded.  Pursuant to CALJIC No. 8.20, the trial court clearly instructed the jury it would have to find that Woodard intended to kill in order to convict him of murder in the first degree:  "If you find that the killing was preceded and accompanied by a clear, deliberate *intent on the part of the defendant to kill*, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."  (Italics added.)  The fact that the instruction went on to explain what would constitute a deliberate and premeditated killing for "the slayer" does not change that.  By no means did the instruction suggest that Woodard would not have to personally possess the intent to kill to be found guilty of first degree murder, or that Woodard could be convicted based on someone else's intent to kill.[9]

In sum, the record of conviction confirms that the trial court was correct in denying Woodard's petition.  The jury convicted Woodard of first degree murder after the court instructed that first degree murder required a

---

[9]    Woodard states that the same "defect" occurred in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), superseded by statute on another ground as stated in *In re Ferrell* (2023) 14 Cal.5th 593, 602, because the jury was instructed that "to find *defendant* guilty of first degree murder, the People had to prove that the *perpetrator* acted willfully, deliberately, and with premeditation."  (*Id*. at p. 161, italics added.)  That language played no role in the *Chiu* decision, however.  Our Supreme Court in *Chiu* held that a first degree murder conviction could not be based on the natural and probable consequences theory (with target offenses of assault and disturbing the peace) because it would be inconsistent with reasonable concepts of culpability to punish someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing.  (*Id*. at pp. 165–166.)  But *Chiu* instructs that first degree murder *can* be based on a direct aiding and abetting theory, as occurred in Woodard's case.  (*Id*. at p. 159.)  And that is still the law.

finding that Woodard intended to kill. He was convicted of murder under a direct aiding and abetting theory after the court instructed that it required a finding that Woodard intended to commit, encourage, or facilitate the killing. And he was convicted of conspiracy to commit murder after the court instructed that conspiracy to commit murder required a specific intent to kill. The record of conviction leaves no possibility that he was convicted of murder under a theory of imputed malice or any other theory banned by SB 1437.

### III. <u>DISPOSITION</u>

The order is affirmed.

CHOU, J.

We concur.

JACKSON, P. J.
BURNS, J.

(A168271)